# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Norfolk Division

**MAJED TALAT HAJBEH,**

       **Petitioner,**

v.                                                                                   Civil Action No. 2:07cv53

**MARY LOISELLE,**
**Field Office Director, Office of Detention**
**and Removal, U.S. Immigration and**
**Customs Enforcement,**

**LEWIS BARLOW,**
**Superintendent, Piedmont Regional Jail,**

**JULIE MYERS,**
**Assistant Secretary, U.S. Immigration and**
**Customs Enforcement,**

**MICHAEL CHERTOFF,**
**Secretary, Department of Homeland Security,**

**and**

**ALBERTO R. GONZALES,**
**Attorney General,**

       **Respondents.**

## FINAL ORDER

This matter was initiated on February 1, 2007, by a petition for a writ of habeas corpus pursuant to Title 28, United States Code, Section 2241, filed by Majed Talat Hajbeh ("Hajbeh" or "petitioner"). The petition alleges violation of federal rights pertaining to petitioner's continued detention pending removal from the United States. On February 2, 2007, the court entered an order referring this matter to United States Magistrate Judge Tommy E. Miller

pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia for a report and recommendation ("R&R"). On March 28, 2007, the Magistrate Judge entered an R&R recommending granting the petition in part and denying the petition in part. By copy of the report, each party was advised of his right to file written objections to the Magistrate Judge's findings and recommendations and advised that this court would make de novo determinations with respect to the portions of the R&R to which objections were filed. On April 18, 2007, respondents filed objections, and on April 23, 2007, the petitioner filed a response; this matter is now ripe for review.

Respondents' objections to the R&R contend first, that Hajbeh failed to carry his burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," Zadvydas v. Davis, 533 U.S. 678, 701 (2001); second, that even if petitioner has sustained his burden, respondents should be afforded thirty days in order to rebut Hajbeh's assertions; and third, that if the court rejects such arguments, respondents should be granted additional time to consider continuing detention under the "post-Zadvydas regulatory framework" based on "special circumstances implicating national security" (Objections to R&R 3). For the reasons stated herein, the court overrules respondents' objections and adopts the findings set forth in the R&R as petitioner has carried his burden and respondents have had ample opportunity to both rebut petitioner's showing that there is no significant likelihood of removal in the reasonably foreseeable future and research any "post-Zadvydas" issues.[1]

---

[1] Hajbeh previously filed a habeas petition challenging his confinement but thereafter withdrew such petition; however, prior to withdrawal, respondents' counsel was ordered to "file a pleading detailing the efforts which have been taken to secure Mr. Hajbeh's removal" (Sept. 27, 2006 Order, No. 2:05cv585, at 3). Eight months have passed since such order and respondents have yet to provide evidence of progress toward removing Hajbeh; such failure both

2

According to the standard set forth in Zadvydas, the burden initially falls on petitioner to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701. Although the court agrees with respondents that the passage of time is by itself insufficient to establish "good cause," here, petitioner doesn't rely on the mere passage of time, but rather, highlights the reasons why petitioner's removal will not likely occur. First, as conceded at oral argument, removal to Jordan is no longer even being pursued by respondents. Second, not only has petitioner's order of removal been final for a <u>minimum</u> of fourteen months,[2] but the government has been attempting to arrange removal to Israel for approximately one year and the only progress reported as of May 22, 2007, is that respondents now understand the "proper way" to ask Israel if they will accept Hajbeh. Third, petitioner has cooperated with efforts to remove him to Israel and, at respondents' request, on December 12, 2006, Hajbeh signed a waiver permitting information to be released in aid of such removal; however, respondents were not able to effectuate removal based on such waiver and four months later, respondents asked petitioner to sign a second waiver

---

warrants granting Hajbeh's petition and denying respondents' request for additional time.

[2] Several different calculations for the time period that petitioner has been in custody subject to a "final order of removal" have been advanced. Respondents' calculation suggests that the period has been a total of fourteen months, five of which are subsequent to the Zadvydas "presumptively reasonable" period. The R&R indicates that the period has been a total of almost twenty-one months, approximately twelve of which are subsequent to the Zadvydas period. Alternatively, if the six-month Zadvydas presumptively reasonable period is deemed to overlap with the ninety-day statutory "removal period," petitioner can be viewed as being detained either eight months or fifteen months beyond the Zadvydas period. This court makes no finding with respect to the proper calculation, as the Magistrate Judge's calculation has not been objected to; thus, the court views the petitioner as being held pending a final order of removal for a total of almost twenty-one months, approximately twelve of which are subsequent to the Zadvydas period.

nearly identical to the first.[3]  Fourth, although respondents represented at oral argument that there are "rumors" that petitioner's in absentia conviction for terrorism in Jordan has been vacated, respondents admit their inability to confirm such "rumor";[4] petitioner therefore retains the possibly inaccurate label of "terrorist" and notwithstanding the inaccuracy of such label, it plainly decreases the likelihood that Israel, or any other nation, will be willing to accept petitioner.  Fifth, and finally, the government's repeated assurances that a response from Israel is "expected soon" have been belied by the government's inability to present any evidence whatsoever that progress toward removal is being made.[5]  More specifically, respondents provided two declarations from an Immigration and Customs Enforcement ("ICE") officer dated October 10, 2006, and April 16, 2007; the first indicates: "As recently as two weeks ago,

---

[3] The waivers consent to third party disclosure "for the purposes of expediting [Hajbeh's] removal to the West Bank directly through Israel" (Response to Objections Exh.A); (Objections to R&R Exh.B).  The first waiver gives the Department of Homeland Security ("DHS") the right to release information, whereas the second replaces "DHS" with the "U.S. Government."

[4] Hajbeh and twenty-seven co-defendants were convicted in Jordan for purported involvement in terrorist activities, including a car bombing; such convictions appear to be based in part on confessions obtained after numerous defendants were tortured.  Hajbeh was not present at the trial and was convicted in absentia.  Subsequent to Hajbeh's conviction, another man confessed to the bombing and testified that none of the original defendants, including Hajbeh, was involved.  Thereafter, the convictions of most of the twenty-seven alleged co-conspirators were overturned and the others had their sentences modified to time served; however, there are questions as to whether Hajbeh's conviction can be overturned without him appearing before a court in Jordan.  Respondents in this matter recently indicated that Hajbeh's conviction may have been overturned in absentia even though petitioner's counsel believed such occurrence to be prohibited by Jordanian law.

[5] At the hearing, respondents argued that the fact that the United States government has not yet been flat out rejected by Israel establishes progress; the court disagrees with such claim as the lack of a rejection merely establishes that there is still some possibility of removal to Israel on an undefinable time-frame.  However, petitioner need not prove that removal is "impossible" nor may respondents rely on the fact that a remote possibility of removal remains; rather, the issue before the court is whether there is good reason to believe that removal will not likely occur in the reasonably foreseeable future.

supplemental information was provided to Israeli authorities in furtherance of this removal and

<u>an answer on repatriation to the West Bank is expected shortly</u>" (Answer to Habeas, Exh.C)

(emphasis added).  However, after petitioner awaited such answer, from prison, for an <u>additional

six months</u>, respondents did not indicate that they received an answer nor present <u>any evidence</u>

of progress; rather, respondents simply advanced a nearly identical declaration from the same

ICE officer indicating that "negotiations are underway" with Israel, that new information was

recently transmitted to the U.S. Embassy in Tel Aviv, and that as previously promised, "an

answer is expected soon."  As of the date of the hearing on this matter, an additional <u>five weeks</u>

since the second declaration was signed and almost two months since the R&R was issued have

passed, yet respondents' only update to the court is that negotiations continue and that the U.S.

government now knows how to properly communicate with Israel.[6]

    As petitioner has carried his initial burden, respondents are required to advance evidence

countering such showing; shifting the burden to the government is plainly rational as

respondents are without question in the best position to update the court on the status of

negotiations and other developments impacting the removal process.  Here, as mentioned above,

the government has had ample opportunity over a period of nearly eight months to advance such

evidence, yet respondents have presented little more than the repeated claim that negotiations

continue and a response is "expected soon."  Although there is no evidence before the court

indicating that respondents are dragging their feet on the removal effort, the government cannot

continue to rely on claims of "best efforts" and promises that removal is just around the corner

---

[6] Respondents contend that it took a year to determine how to even properly file a removal request with Israel, yet at the same time provide two declarations from an ICE officer highlighting the fact that DHS has recently been successfully repatriating Palestinians to the West Bank and Gaza Strip; it is unclear why such past success did not educate DHS/ICE on how to properly request removal in this case.

when they have no evidence to suggest that progress is being made.  See Abdulle v. Gonzales, 422 F. Supp. 2d 774, 779 (W.D. Tex. 2006) ("Respondents' instant argument is remarkably similar to the contention that continued detention be lawful so long as good faith efforts to effectuate detention continue, a rationale the Zadvydas Court expressly rejected.").  Although "best efforts" and ongoing negotiations may have been convincing seven months ago when respondents submitted the first declaration from the ICE officer, at this stage, such showing is insufficient as "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Zadvydas, 533 U.S. at  701. Petitioner has now been confined subsequent to a final order of removal for nearly twenty-one months,[7] exceeding the postremoval confinement of most cases cited in the parties' briefs and the R&R, suggesting that "what counts as the 'reasonably foreseeable future'" in this case is now exceedingly short.  In the face of such shrinking period, respondents remain unable to present any evidence suggesting that Hajbeh will be removed in "days, weeks, or months" (R&R 10).  Tellingly, even after: (1) the R&R recommended that Hajbeh be released from physical custody;  and (2) respondents had nearly two additional months to gather evidence of progress toward removal, at the May 22, 2007 hearing, respondents once again failed to offer any evidence of progress; as a result, respondents have plainly failed to rebut the petitioner's showing.

      The court, having reviewed the record, carefully considered respondents' objections, and

---

[7] Additionally, although not directly relevant to the court's inquiry, the court notes that petitioner has been incarcerated for nearly four years and that it has been reported to the court that, prior to his seizure, he was living in Northern Virginia with his wife and seven children and had been employed for five years as a soil testing engineer.  The court finds it difficult to conceive how his continued confinement remains "reasonable," especially because his removal appears to be predicated on a 1993 visa application that misrepresented his marital status.

having made de novo findings with respect to the portions of the R&R objected to, does hereby adopt and approve the findings and recommendations set forth in the Report of the United States Magistrate Judge filed on March 28, 2007. Specifically, petitioner's claim set forth in Ground (d)(i),[8] contending that his Fifth Amendment procedural due process rights have been violated due to the lack of any meaningful opportunity to demonstrate that he should not be detained, is **DENIED.** Likewise, although this court does not disturb the R&R's denial premised upon lack of jurisdiction to address Grounds (b), (c)(ii), and (d)(ii), claims involving whether assurances from the Jordanian government would be sufficiently reliable for the Attorney General to initiate petitioner's removal to Jordan, the court notes that such claims are now moot as respondents indicated at oral argument that the U.S. government is no longer pursuing removal to Jordan. Therefore, Grounds (b), (c)(ii), and (d)(ii) are deemed **MOOT**, or in the alternative, **DENIED**.

      Hajbeh's petition correctly claims in Grounds (a) and (c)(i) that his continued detention pending removal would violate his due process rights because there is no significant likelihood of petitioner's removal in the reasonably foreseeable future. Accordingly, if respondents are unable to remove petitioner within fourteen days from the date of this order, Hajbeh's petition shall be **GRANTED** and he shall be released from physical custody, subject to such terms and conditions as ICE deems appropriate, pending the issuance of travel documents. The fourteen day period beginning upon the issuance of this order should be ample time for ICE to formulate a supervision plan in accordance with the provisions of 8 U.S.C. § 1231(a)(3), 8 C.F.R. § 241.5, and any other applicable agency regulations.

      The Clerk is **REQUESTED** to send a copy of this Order to counsel of record, by mail

---

[8] For consistency, this court refers to petitioner's Grounds for relief in the same manner as the R&R; pages 4-5 of the R&R set forth the numbering of such Grounds (R&R 4-5).

and by facsimile.

      **IT IS SO ORDERED**.

                                          /s/  
                                          Jerome B. Friedman  
                               UNITED STATES DISTRICT JUDGE

Norfolk, Virginia  
May 25, 2007